UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CARY COSGROVE,

                    Plaintiff,                Case No. 2:16-cv-110

v.                                  Honorable Gordon J. Quist

JOHN BURKE, et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Niemi, Schwab, Tucker, Spruce, Unknown Party #1 Law Librarian, Tammlin, Salewske, Raymond, Hearing Officer Unknown S. Burke, Larala, Salmi, McIntyre, Wealton, Schaub, Parrish, Hytaca, and Median. The Court will serve the complaint against Defendants John Burke, Pesola, and Dube.

**Discussion**

I.      Factual allegations

Plaintiff Cary Cosgrove, a state prisoner currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Resident Unit Manager John Burke, Acting Deputy Warden S. Niemi, Corrections Officer Unknown Schwab, Corrections Officer Unknown Tucker, Assistant Resident Unit Supervisor Joseph Spruce, Law Librarian Unknown Party #1, Corrections Officer Unknown Tammlin, Corrections Officer Unknown Salewske, Hearing Investigator Unknown Raymond, Hearing Officer Unknown S. Burke, Mental Health Worker Ann Larala, Mental Health Worker Mandi[1] Salmi, Corrections Officer Unknown McIntyre, Corrections Officer Unknown Wealton, Captain Unknown Schaub, Corrections Officer R. Parrish, Corrections Officer B. Pesola, Corrections Officer Unknown Dube, Corrections Officer Unknown Hytaca, and Mental Health Doctor Unknown Median.

Plaintiff's complaint consists of sixteen handwritten pages, which are sometimes difficult to decipher, and is made up of disjointed and unclear descriptions of the alleged violations of his rights by the named Defendants.  Plaintiff also offers one-hundred and eighty-five pages of exhibits, including copies of grievances, grievance responses, misconduct records, and other prison records and policies.  After a careful review of the complaint and attached exhibits, the Court concludes that Plaintiff's complaint is subject to partial dismissal for failure to state a claim.

Plaintiff states that, as a child, he was diagnosed as having Bipolar Disorder and ADHD.  Plaintiff states that he struggles with preparing legal work, sleeping at night, and other activities of daily living.  Plaintiff alleges that on November 30, 2015, Plaintiff agreed to accept mental health treatment because he was not feeling safe at the Baraga Correctional Facility.

---

[1]Plaintiff originally named Ms. Salmi as "Kathryn," but in a letter filed on June 2, 2016, (ECF No. 6) Plaintiff stated that he had since discovered that her first name was actually "Mandi."

However, his request for counseling services through Mental Health was denied. Plaintiff was also denied placement in a program for ADHD and Bipolar. Plaintiff told Defendant Larala that he was going to file a grievance regarding the denial of treatment, and Defendant Larala responded by writing a false threatening behavior ticket on Plaintiff.

On November 30, 2015, Plaintiff received an order from the United States District Court for the Eastern District of Michigan in Case No. 2:15-cv-11419, stating that Plaintiff had until December 1, 2015, to file a response in order to prevent dismissal of his action. Plaintiff requested paper, a pen, and an envelope from Defendant Spruce, who stated that he only passed out envelopes on Thursdays. Plaintiff claims that this action caused United States Magistrate Judge Stephanie Dawkins to file a Report and Recommendation to dismiss Plaintiff's complaint on February 2, 2016.

On December 5 or 6, 2015, Plaintiff provided an affidavit to a neighboring prisoner. On December 8, 2015, Defendant Spruce notarized the affidavit. On December 10, 2015, Plaintiff was called out of his cell to receive back x-rays and was threatened by Defendants McIntyre and Wealton, who told Plaintiff to stop pursuing lawsuits and grievances and to just worry about himself. Defendants McIntyre and Wealton told Plaintiff that it would be very easy to accuse him of spitting on staff. Plaintiff filed a grievance asserting staff corruption and sent it directly to step III pursuant to policy. Plaintiff states that the only response he received was a rejection indicating that it should not have been sent directly to step III.

Plaintiff alleges that he received numerous false retaliatory misconduct tickets from the named Defendants. On December 17, 2015, Plaintiff filed a grievance on Defendant Schwab for warning Plaintiff against doing legal work for himself and other prisoners. On December 21, 2015, Defendant Schwab wrote a ticket on Plaintiff for threatening behavior. On December 28, 2015, Plaintiff wrote a grievance, which was reviewed with him on December 30, 2015, by Sergeant

Howell.  Approximately two hours later, Defendant Tucker retaliated against Plaintiff by writing a misconduct ticket on him for threatening behavior.  Plaintiff claims that Defendants Hearing Officer Unknown S. Burke and Raymond violated his right to a fair hearing by ruling his request for a witness statement from his next door neighbor "unnecessary."

On January 18 and 19 of 2016, Defendant John Burke denied Plaintiff's request for notary work and oversized envelopes, which Plaintiff needed in order to send mail to the United States District Court and the Baraga Circuit Court.  On January 19, 2016, Defendant John Burke told Plaintiff that he had heard that Plaintiff was suicidal.  Plaintiff claims that Defendants John Burke, Pesola, and Dube denied Plaintiff a toothbrush and toothpaste on numerous occasions and only let Plaintiff brush his teeth approximately eight times in a period of twenty days.  In addition, they placed Plaintiff in a room with dried poop in the air return vent.  When Plaintiff asked to be moved, he was told to think of it as money for being subjected to inhumane treatment.

On January 20, 2016, Defendant Salewske wrote two false misconduct tickets on Plaintiff for disobeying a direct order, and accused him of trying to hang himself.  One of the misconduct tickets falsely claimed that Plaintiff had attempted to assault Defendant Parrish.  This resulted in Plaintiff being placed on suicide watch.  Plaintiff also states that Defendant Captain Schaub had him placed on a mattress restriction.  Plaintiff believes that this was in retaliation for a grievance that Plaintiff had filed on Defendant Schaub's son Granite.  Defendant Niemi approved the mattress restriction on January 22, 2016, which continued until February 8, 2016.  Plaintiff claims that Defendant Niemi also acted in retaliation because Plaintiff had filed a grievance on Defendant Niemi on December 25, 2015.

During the January 20, 2016, incident leading up to the mattress restriction, Plaintiff claims that Corrections Officers used three cans of pepper spray and a "ram bar" on Plaintiff, who

-4-

had placed his mattress over the door in an attempt to protect his legal material.  Plaintiff states that Corrections Officer Majesko, who filmed the incident, told Plaintiff that he would testify as to the use of force, as well as to the fact that MDOC employees violated the rules by not having their names on the outside of their gear.  Plaintiff claims that during this incident, officers had Plaintiff's hand wedged in the door slot with the ram bar.  Once Plaintiff was removed from his cell, more force was used to remove his clothing in the medical room.  Plaintiff states that the RN agreed to testify as to the use of force, which caused an injury to Plaintiff's left hand.  Plaintiff continues to suffer from numbness and nerve damage as a result.  Plaintiff also states that another Corrections Officer is willing to testify to the harassment and retaliation he was subjected to by staff.

Plaintiff also claims that Defendants improperly denied him grievance forms while on suicide watch.  Plaintiff alleges that Defendant Hytaca sexually harassed him by making a sexual comment while Plaintiff was in the shower.  Plaintiff attempted to grieve this issue, but he never received a grievance tracking number.

Plaintiff alleges that Defendants Larala and Salmi refused to help Plaintiff after he complained of having nightmares and fearing for his safety.  Plaintiff was told that he was fine and was merely seeking attention.  At the time Plaintiff filed his complaint, Defendant Salmi was Plaintiff's social worker and had kept him on suicide watch for approximately twenty-three days. While Plaintiff was in observation, he told Defendants Salmi and Median that he feared for his safety.  Defendants Salmi and Median kept him on suicide watch for twenty-three days, despite the fact that they kept telling Plaintiff that he was not suicidal.  Plaintiff states that he was kept in a mold infested room and that Defendants failed to provide him with adequate mental health treatment. Plaintiff seeks damages and equitable relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that he received retaliatory misconduct tickets from Defendants Larala, Schwab, Tucker, and Salewske. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

A review of Plaintiff's complaint, as well as the attachments thereto, shows that Plaintiff was found guilty of each of the misconduct tickets he complains of in this case. A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Burton v. Rowley*, 234 F.3d 1267, *2 (6th Cir. 2000) (unpublished) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). *See also Annabel v. Frost*, No. 14–10244, 2015 WL 1322306, at *5 (E.D. Mich. Feb.17, 2015) report and recommendation adopted, No. 14–10244, 2015 WL 1510680 (E.D. Mich. Mar. 30, 2015) (noting that the checkmate doctrine has been involved in sixteen unpublished Sixth Circuit opinions).

-7-

Therefore, Plaintiff's claims that he received false retaliatory misconduct tickets from Defendants Larala, Schwab, Tucker, and Salewske are properly dismissed.

Plaintiff further claims that Defendants Schaub and Niemi retaliated against him by having him placed on a mattress restriction following the incident on January 20, 2016. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that the actions of Defendants Schaub and Niemi were motivated by any of his protected conduct. He merely concludes that because he filed some grievances within a few

days, weeks or months before Defendants' actions, their actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *See Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff merely alleges temporal proximity between Defendants' conduct and his many grievances. In addition, Plaintiff concedes that he placed his mattress over the door during the incident, impeding access to his cell in violation of orders to remove it. Therefore, Plaintiff's retaliation claims against Defendants Schaub and Niemi are properly dismissed.

Finally, Plaintiff claims that Defendants McIntyre and Wealton retaliated against him four days after Plaintiff provided an affidavit to another inmate by stating that it would be easy to accuse Plaintiff of spitting on staff if he continued to pursue lawsuits and grievances. However, Plaintiff fails to allege that Defendants McIntyre or Wealton took any action against him. A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. The Court concludes that a passing comment regarding how easy it would be to

accuse Plaintiff of wrongdoing is not sufficiently adverse to rise to the level of a constitutional violation.

Plaintiff claims that he was improperly denied grievance forms while he was on suicide watch.  Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact."  *Griffin v. Berghuis*, 563 Fed. App'x 411, 415-416 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp.  8, 10 (N.D. Ill. 1982).  Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his

grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).  In light of the foregoing, Plaintiff's allegations regarding the denial of grievance forms fails to state a cognizable claim.

Plaintiff also claims that his First Amendment right to access the courts was violated by Defendants Spruce, Unknown Party #1 Law Librarian, and John Burke.  In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts.  While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively.  *Lewis v. Casey*, 518 U.S. 343 (1996).  Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance.  *Id.* at 351 (1996).  Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards.  *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Further, in order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Where, as here, "the access claim . . . looks backward,[2] the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415. "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

In this case, Plaintiff alleges that on January 18 and 19 of 2016, Defendant Burke denied Plaintiff's request for notary work and oversized envelopes, which prevented Plaintiff from sending mail to the United States District Court, as well as from sending a habeas corpus action to the Baraga Circuit Court. Plaintiff fails to allege that he was under a specific time constraint or explain why he was unable to send the mail out on January 20, 2016, or thereafter. Because Plaintiff has not alleged facts showing that Defendant Burke's conduct resulted in an actual injury to a pending or contemplated legal claim, his access to courts claim against Defendant Burke is properly dismissed.

Plaintiff claims that Unknown Party #1 Law Librarian denied Plaintiff photocopies on multiple occasions and that he could not read the signature on the denials. However, Plaintiff

---

[2]Backward-looking claims "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims . . . is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Christopher*, 536 U.S. at 414 (footnotes omitted). In contrast, the "essence" of a forward-looking claim "is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413.

does not allege facts showing that he suffered an actual injury as a result of these denials. Therefore, his access to courts claim against Defendant Unknown Party #1 Law Librarian is properly dismissed.

With regard to Defendant Spruce, Plaintiff claims that on November 30, 2015, he received an order instructing him to file a response by December 1, 2015, in order to avoid dismissal of a lawsuit he had filed in the United States District Court for the Eastern District of Michigan. The case number of this lawsuit was 2:15-cv-11419. Plaintiff states that Defendant Spruce's failure to provide Plaintiff with requested paper, pen, and an envelope prevented him from filing a response and resulted in the dismissal of his action. The Court has reviewed the underlying lawsuit and notes that on February 2, 2016, United States Magistrate Judge Stephanie Dawkins Davis issued a report and recommendation for dismissal of Plaintiff's action with prejudice. In detailing the procedural history of that case, Magistrate Judge Dawkins Davis states:

> On August 18, 2015, defendants filed a motion to dismiss and motion for summary judgment pursuant to Fed. R. Civ. P. 12(b)(6) and 56(a) respectively, arguing that plaintiff's complaint should be dismissed in its entirety because (1) defendant MDOC and MDOC employees Walker and Sullivan, in their official capacities, are immune from plaintiff's claims under the Eleventh Amendment, (2) defendants Walker and Sullivan, in their individual capacities, are entitled to qualified immunity because plaintiff has not established that their conduct violated clearly established statutory or constitutional rights, and (3) that plaintiff failed to exhaust his administrative remedies under 42 U.S.C. § 1997e. (Dkt. 22).

> On September 14, 2015, the Court entered an order requiring a response to defendants' motion to dismiss and for summary judgment by October 29, 2015. (Dkt. 25). Plaintiff was directed to file a response to defendants' motions, including a written brief, in accordance with Eastern District of Michigan Local Rule 7.1. (Dkt. 25). That order further provided that **"failure to file a response may result in sanctions, including granting all or part of the relief requested by the moving party."** (Dkt. 25) (emphasis in original). Notwithstanding, plaintiff failed to file a timely response to the motion, and as a result the Court issued an order for plaintiff to show

-14-

cause in writing by December 1, 2015, why this Court should not recommend that plaintiff's complaint be dismissed for failure to file a response. (Dkt. 34). Alternatively, the Court indicated that plaintiff could file a response to the motion to dismiss by that same date. *Id*. In the show cause order, the Court specifically warned that "**[f]ailure to timely or adequately respond in writing to this Order to Show Cause or timely file a response to the motion to dismiss will result in a recommendation that the motion be granted or that the entire matter be dismissed under Rule 41(b).**" (Dkt. 34) (emphasis in original). Plaintiff did not timely respond to the show cause order or file a response to the pending motion, but instead submitted a pleading entitled "Verified Complaint" detailing a litany of related and unrelated allegations of MDOC wrongdoing. (Dkt. 36).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's complaint against defendants be **DISMISSED** with prejudice under Federal Rules of Civil Procedure 12(b)(6) and 56(a), or, in the alternative, under Federal Rule of Civil Procedure 41(b), and that the pending motions (Dkt. 6, 7, 12, 19, 22, 26, 28, 33) be **TERMINATED** as **MOOT**.

*Cosgrove v. MDOC, et al.*, Case No. 2:15-cv-11419, ECF No. 38, PageID.383-384 (ED Mich., Feb. 22, 2016).

In addressing the defendants' claims of qualified immunity, Magistrate Judge Dawkins Davis notes:

First, as to plaintiff's claims against defendant Walker for inhumane treatment in violation of his Eighth Amendment rights, verbal harassment or even idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Plaintiff's allegations as to defendant Walker's statements can be characterized at worst as unaccommodating and apparently personally offensive to plaintiff. Yet, viewing the statements alleged in the complaint in the light most favorable to plaintiff, they cannot credibly be characterized as approaching inhumane. Accordingly, plaintiff cannot demonstrate that defendant Walker's actions have violated a constitutional right, and qualified immunity therefore applies.

Additionally, although plaintiff claims defendant Sullivan delayed posting plaintiff's outgoing legal mail, he offers no rebuttal argument or evidence to defendant Sullivan's affidavit and attached

-15-

> mail activity logs which in fact demonstrate timely dispatch of plaintiff's outgoing mail. *See Moldowan*, 578 F.3d at 374 (the nonmoving party may not rest upon its mere allegations, but rather must set forth specific facts showing that there is a genuine issue for trial). Hence, plaintiff has not demonstrated that defendant Sullivan violated his First Amendment rights. Thus, defendant Sullivan is likewise protected from plaintiff's claims under qualified immunity.

*Id.* at PageID.391-392.

Magistrate Judge Dawkins Davis then states that Plaintiff's action could also be dismissed for failure to prosecute under Fed. R. Civ. P. 41(b). *Id.* On February 22, 2016, United States District Judge Mark A. Goldsmith adopted the report and recommendation, found that the defendants were entitled to qualified immunity, and dismissed the case with prejudice. *Id.*, ECF Nos. 40 and 41.

A review of the record in Case No. 2:15-cv-11419 indicates, firstly, that Plaintiff had ample opportunity to file a response to the motion to dismiss prior to the actions of Defendant Spruce in denying Plaintiff paper, pen, and an envelope. In addition, the Court notes that although the United States District Court for the Eastern District of Michigan could have dismissed Plaintiff's complaint for failure to prosecute, it did not do so. Rather, it reviewed Plaintiff's claims and found that he did not show that the defendants had violated his constitutional rights. Accordingly, the Court concludes that Defendant Spruce's actions did not cause Plaintiff to suffer an actual injury for purposes of a First Amendment access to courts claim.

Plaintiff also claims that he received false major misconduct tickets and that the investigation and hearing process were biased in violation of his due process rights. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before

-16-

depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did

not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather

the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer

prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time
> credit for satisfactory behavior while in prison.  But here the State
> itself has not only provided a statutory right to good time but also
> specifies that it is to be forfeited only for serious misbehavior.
> Nebraska may have the authority to create, or not, a right to a
> shortened prison sentence through the accumulation of credits for
> good behavior, and it is true that the Due Process Clause does not
> require a hearing "in every conceivable case of government
> impairment of private interest."  But the State having created the
> right to good time and itself recognizing that its deprivation is a
> sanction authorized for major misconduct, the prisoner's interest has
> real substance and is sufficiently embraced within Fourteenth
> Amendment "liberty" to entitle him to those minimum procedures
> appropriate under the circumstances and required by the Due Process
> Clause to insure that the state-created right is not arbitrarily
> abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of

good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates

to the creation and forfeiture of disciplinary credits[3] for prisoners convicted of crimes occurring after

April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of

disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely

affects parole eligibility, which remains discretionary with the parole board.  *Id.* at 440.  Building on

this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct

citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912;

*accord, Taylor v. Lantange*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030,

2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that

"plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth

Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011).

In the absence of a demonstrated liberty interest, Plaintiff has no due process claim based on the loss

of disciplinary credits.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectable liberty interest in disciplinary credits, a prisoner

may be able to raise a due process challenge to prison misconduct convictions that result in a

significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff has not

identified any significant deprivation arising from his convictions.  Unless a prison misconduct

conviction results in an extension of the duration of a prisoner's sentence or some other atypical

hardship, a due process claim fails.  *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

Finally, Plaintiff alleges that various Defendants violated his rights under the Eighth

Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states

to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene

society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized

measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596,

600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential

food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*,

452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff claims that Defendants Larala, Salmi, and Median violated his rights when they refused to provide him with necessary mental health treatment.  The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates.  *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985).

A review of Plaintiff's complaint and attached exhibits (ECF No. 1-6) show that Plaintiff sought one-on-one counseling and medication from Defendants Larala, Salmi, and Median, and that he did not agree with their decision to keep him on suicide watch for a period of approximately twenty-three days.  A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the

objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or

> omissions sufficiently harmful to evidence deliberate indifference to
> serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison

medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state

a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v.

Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v.

Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

      The Sixth Circuit distinguishes "between cases where the complaint alleges a

complete denial of medical care and those cases where the claim is that a prisoner received

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a

prisoner has received some medical attention and the dispute is over the adequacy of the treatment,

federal courts are generally reluctant to second guess medical judgments and to constitutionalize

claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th

Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258

F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds

v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001);

*Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for

his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to

no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh

v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

      In this case, Plaintiff disagrees with the treatment he received, being kept on suicide

watch, but seeks other treatment such as medications and counseling. In addition, Plaintiff claims

that he is not suicidal, but merely afraid of staff. The allegations set forth by Plaintiff do not rise to

the level of an Eighth Amendment violation.   Therefore, Plaintiff's Eighth Amendment claims against Defendants Larala, Salmi, and Median are properly dismissed.

Plaintiff claims that Defendant Hytaca violated his rights by making sexual comments to him while he was in the shower.   "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment."  *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain.  *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at

*3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim).

Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

If true, Defendant Hytaca's conduct toward Plaintiff was reprehensible, but it does not rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendant Hytaca ever touched him or had any form of physical contact with him. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d

at 132; *Zander*, 1998 WL 384625, at *2.  Therefore, Plaintiff's allegation fails to state an Eighth Amendment claim against Defendant Hytaca.

Plaintiff claims that he was subjected to excessive force in violation of the Eighth Amendment when officers used three cans of pepper spray and a ram bar on him on January 20, 2016.  Plaintiff also claims that officers had his hand wedged in the door slot with the ram bar, which injured his hand.  Once Plaintiff was removed from the cell, more force than was necessary was used to remove his clothing.  The Court notes that not every shove or restraint gives rise to a constitutional violation.  *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).  On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law."  *Combs*, 315 F.3d at 556 (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); Bailey v. Golladay, 421 F. Appx. 579, 582 (6th Cir. 2011).

While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident."  *Hudson*, 503 U.S. at 9.  "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."  *Id.*

In this case, Plaintiff alleges that the amount of force used was excessive and resulted in an injury to his hand.  However, Plaintiff fails to allege that any of the named Defendants in this

case were involved in the use of force.  Therefore, Plaintiff's claim of excessive force is properly dismissed because it does not implicate wrongdoing on the part of any of the named Defendants in this case.

Finally, Plaintiff claims that Defendants John Burke, Pesola, and Dube violated the Eighth Amendment when they denied him toothpaste and a toothbrush on numerous occasions and only allowed him to brush his teeth approximately eight times in a period of twenty days.  In addition, he claims that they violated his Eighth Amendment rights when they placed him in a room with another inmate's dried feces in the air return vent.  When Plaintiff asked to be moved, they told him to think of it as "money" for being subjected to inhumane treatment.  The Court concludes that these claims are nonfrivolous and may not be dismissed on initial review.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Niemi, Schwab, Tucker, Spruce, Unknown Party #1 Law Librarian, Tammlin, Salewske, Raymond, Hearing Officer Unknown S. Burke, Larala, Salmi, McIntyre, Wealton, Schaub, Parrish, Hytaca, and Median will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants John Burke, Pesola, and Dube.

An Order consistent with this Opinion will be entered.

Dated:  October 7, 2016                        _____/s/ Gordon J. Quist_____
                                                             GORDON J. QUIST
                                                             UNITED STATES DISTRICT JUDGE